Alesa KELLY, Appellant

v.

Jerry Bob BROWN, Union Pacific Railroad Company, and Dallas, Garland and Northeastern Railroad, Inc., Appellees.

No. 05–06–00456–CV.

Court of Appeals of Texas, Dallas.

July 17, 2008.

Michael T. Maher, Dallas, David C. Turner, Jr., Turner & Turner, LLP, Paris, for Appellant.

Leann Wainscott Diamond, Margaret E. Horton, Friedman & Feiger, L.L.P., Dallas, for Appellees.

Before Justices MOSELEY, O'NEILL, and LAGARDE.[1]

## OPINION

Opinion by Justice MOSELEY.

Plaintiff/appellant Alesa Kelly sued defendants/appellees Jerry Bob Brown, Union Pacific Railroad Company, and Dallas, Garland, and Northeastern Railroad, Inc. for damages sustained in an automobile-train collision. Appellees moved for summary judgment on both traditional and no-evidence grounds, which the trial court granted. Kelly appeals. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On March 24, 2003, Kelly left her home to go to work. Kelly's route to work took her over a railroad crossing on Craft Road in Grayson County. The crossing was equipped with railroad crossbuck signs, and had no gates or other warning devices. There is evidence she traversed that crossing about three times per week for about seven months.

At 5:25 a.m., Kelly's vehicle hit the side of a moving freight car at the railroad crossing. The freight car was owned by Union Pacific; it was the thirtieth car of a fifty-car freight train operated by engineer Brown on behalf of his employer, the Dallas, Garland and Northeastern Railroad, Inc. As a result of the collision, Kelly's vehicle was damaged, and she sustained personal injuries. Kelly sued for compensatory and punitive damages, alleging appellees "negligently failed to afford [her] warning of the presence of a train . . . at the crossing. . . ."

Appellees filed an amended motion for summary judgment asserting both traditional and no-evidence grounds. In their motion they stated that, through discovery, they ascertained that Kelly's failure to warn claim was based on their failure to install reflector tape on the side of the freight cars.

In their motion appellees asserted two principal grounds for summary judgment. First, they asserted that: (1) any duty to install reflector tape on the freight cars

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

under the common law "reasonable care" standard was preempted by federal regulations that negated any such duty; (2) the evidence established as a matter of law that the lack of such tape did not cause Kelly's accident; and (3) there was no evidence the lack of such tape was a proximate cause of Kelly's accident.

Second, appellees asserted they were entitled to summary judgment based on their affirmative defense of contributory negligence on Kelly's part.[2] Appellees argued that: (1) Kelly violated Texas Transportation Code section 545.251(c), which governs the operators of vehicles approaching certain railroad crossings; (2) Kelly's violation of the statute was negligence per se on her part; (3) if Kelly had complied with the statute, the accident would not have occurred; and thus (4) Kelly's contributory negligence was the proximate cause of the accident.[3] Appellees supported their motion with Kelly's deposition.

Kelly filed a response to appellees' motion, also supported by evidence. Kelly argued that: (1) there was neither express nor implied preemption as a matter of law; (2) she was not contributorily negligent per se because there was evidence of an excuse; (3) appellees failed to establish that section 545.251(c) was for their protection, and not the protection of motorists; and (4) the evidence showed the absence of reflector tape was a cause of the accident. She argued that the evidence that she did not see the freight car in time to avoid hitting it supported her argument that it was more likely than not that the presence of reflector tape on the freight car would have prevented the collision.

The trial court rejected appellees' first principal ground for summary judgment— that Kelly's negligence claim based on the failure to place reflector tape on the freight cars was preempted by federal law. However, in response to appellees' second principal ground for summary judgment, it found

> as a matter of law that [Kelly] is contributorily negligent per se and that such negligence of [Kelly] was the proximate cause of her injuries. Further, it appears to the Court that, had [Kelly] not violated Texas Transportation Code § 545.251(c), then [Kelly's] accident and resulting injuries would not have occurred.

The trial court also found there was no evidence that Brown was negligent. Thus, the trial court granted summary judgment against Kelly on all of her claims. Kelly appeals.

## II. STANDARD OF REVIEW

■ In a traditional summary judgment motion, the moving party has the burden of showing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex.2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex.2003). We

---

**2.** Although appellees refer to their affirmative defense as contributory negligence per se, we note that proportionate responsibility applies by statute. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 33.001–.017 (Vernon 1997 & Supp.2007). Our use of "contributory" is not an indication that it, rather than proportionate responsibility, applies in the present case.

**3.** Appellees also asserted that, to the extent Kelly's petition could be construed to assert a claim for failing to blow the train horn prior to entering the crossing, they were entitled to traditional and no-evidence summary judgment on that claim. Lastly, appellees asserted they were entitled to a traditional and no-evidence summary judgment as to "any claims asserted by [Kelly] against ... Brown...."

consider not only all those grounds the trial court ruled on, but also those grounds the trial court did not rule on but that are preserved for appellate review. *Sefzik v. City of McKinney*, 198 S.W.3d 884, 890 (Tex.App.-Dallas 2006, no pet.) (citing *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996)). To preserve the grounds, the party must raise them in the summary judgment proceeding and present them in an issue or cross-point on appeal. *Cates*, 927 S.W.2d at 626; *Sefzik*, 198 S.W.3d at 890.

■ In a no-evidence summary judgment motion, the movant contends that there is no evidence of one or more essential elements of the claims for which the non-movant would bear the burden of proof at trial. TEX.R. CIV. P. 166a(i); *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex.2008) (per curiam). A party cannot file a no-evidence motion for summary judgment based on a matter, such as an affirmative defense, on which it has the burden of proof. *See Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 838 (Tex. App.-Dallas 2005, no pet.). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact as to the challenged elements. TEX.R. CIV. P. 166a(i).

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005); *Knott*, 128 S.W.3d at 215. We assume all evidence favorable to the non-movant is true and indulge every reasonable inference and resolve all doubts in the non-movant's favor, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See Knott*, 128 S.W.3d at 215 (traditional motion); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006) (no-evidence

motion); *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25, 827 (Tex.2005) (stating standard and scope of legal sufficiency review).

## III. PRELIMINARY MATTERS

### A. Matters Not Contested on Appeal

Appellees moved for a traditional and no-evidence summary judgment as to any claim against Brown, and as to any claim that they negligently failed to sound the train's horn before the train entered the railroad crossing, "to the extent [Kelly's] petition can be construed to include" such a claim. Although the trial court's judgment does not expressly grant summary judgment on a failure to sound the horn claim, it states that all relief not expressly granted was denied and that it was a final judgment disposing of all issues and parties. Moreover, the trial court specifically found there was no evidence Brown was negligent and granted summary judgment in his favor on all of Kelly's claims against him, and only Brown, as the engineer of the train, would have been in the position to sound—or not sound—the horn.

On appeal, Kelly directs no issue or argument as to the summary judgment disposing of her claims against Brown and any claim based on the failure to sound the train's horn. Accordingly, we affirm the trial court's judgment as to these claims. *See Smith v. Tilton*, 3 S.W.3d 77, 83 (Tex. App.-Dallas 1999, no pet.) (summary judgment on claim affirmed if appellant does not properly challenge each independent ground for summary judgment asserted against that claim).

### B. Preemption

■ As to Kelly's remaining claim—negligence based on the failure to install reflector tape—the railroad companies' motion asserted, among other things, that

they had no duty to install reflector tape because any such duty under common law was expressly and negatively preempted under federal law. Preemption is an affirmative defense. *Harrill v. A.J.'s Wrecker Serv., Inc.*, 27 S.W.3d 191, 194 (Tex.App.-Dallas 2000, pet. dism'd w.o.j) (citing *Kiefer v. Cont'l Airlines, Inc.*, 882 S.W.2d 496, 497–98 (Tex.App.-Houston [1st Dist.] 1994), *aff'd*, 920 S.W.2d 274 (Tex.1996)). Thus, as the parties seeking summary judgment, the railroad companies had the burden to prove their preemption affirmative defense as a matter of law. *See id.; Kiefer*, 882 S.W.2d at 497.

On appeal the railroad companies repeat their preemption argument, and Kelly responds to the argument at length in her reply brief. However, the trial court expressly rejected the railroad companies' preemption affirmative defense, and on appeal they did not bring an issue or cross-point contending the trial court erred in denying them summary judgment on the basis of federal preemption. Therefore, the railroad companies' preemption argument was not preserved, and presents nothing for our review. *See Sefzik*, 198 S.W.3d at 890.

## IV. KELLY'S NEGLIGENCE PER SE

The trial court disposed of Kelly's remaining claim—negligence based on the failure to install reflector tape—based on the railroad companies' affirmative defense of negligence per se predicated on Kelly's unexcused violation of section 545.521(c) of the transportation code. That section provides:

> An operator of a vehicle who approaches a railroad grade crossing equipped with

railroad crossbuck signs without automatic, electric, or mechanical signal devices, crossing gates, or a flagger warning of the approach or passage of a train *shall yield the right-of-way to a train in hazardous proximity to the crossing,* and proceed at a speed that is reasonable for the existing conditions. *If required for safety, the operator shall stop* at a clearly marked stop line before the grade crossing or, if no stop line exists, *not closer than 15 feet* or farther than 50 feet *from the nearest rail.*

Tex. Transp. Code Ann. § 545.251(c) (Vernon 1999) (emphasis added).[4] The trial court specifically found: (1) Kelly was contributorily negligent per se; (2) her negligence was "the proximate cause" of her injuries; and, (3) but for her violation of the statute, the accident and Kelly's injuries would not have occurred.

On appeal Kelly asserts three issues, one directed to the railroad companies' no-evidence grounds for summary judgment, and two directed to their grounds for traditional summary judgment.[5]

### A. Appellees' No–Evidence Motion for Summary Judgment

In her first issue, Kelly asserts the railroad companies' no-evidence motion cannot support the trial court's judgment, as the railroad companies—not Kelly—would have the burden as to the affirmative defense of negligence per se at trial. Appellees admitted at oral argument that they were not entitled to a no-evidence summary judgment on such a matter, though they contended they were nevertheless entitled to a traditional summary judgment based on this affirmative defense.

---

4. An offense under section 545.251 is punishable by a fine of not less than $50 or more than $200. Tex. Transp. Code Ann. § 545.251(f).

5. Kelly does not raise an issue on appeal concerning comparative negligence or the trial court's causation finding.

We agree appellees may not obtain a summary judgment under rule 166a(i) based on the elements of their negligence per se affirmative defense. *See* Tex.R. Civ. P. 166a(i); *Selz*, 152 S.W.3d at 838. Accordingly, we resolve Kelly's first issue in her favor. We next address whether the summary judgment, based on the railroad companies' affirmative defense of Kelly's negligence per se, can be upheld on traditional grounds.

## B. Traditional Summary Judgment on Affirmative Defense of Kelly's Negligence Per Se

In her second and third issues, Kelly asserts the trial court erred in granting the railroad companies' traditional summary judgment motion because they failed to prove as a matter of law that: (1) they were in the class whose interests section 545.251(c) was intended to protect; and (2) her failure to comply with section 545.251(c) was unexcused.

### 1. Applicable Law

■■ Under the common law, a cause of action for negligence has three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001); *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex.1998); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 289 (Tex.1996).

■ Under the common law, one person owes another the duty to act as a reasonably prudent person would act under the same or similar circumstances re-

garding any reasonably foreseeable risk. *Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984); *Great Atl. & Pac. Tea Co. v. Evans*, 142 Tex. 1, 4, 175 S.W.2d 249, 250–51 (1943). However, "[w]here the Legislature has declared that a particular act shall not be done, it fixes a standard of reasonable care, and an unexcused violation of the statute constitutes negligence or contributory negligence as a matter of law." *Mo. Pac. R.R. Co. v. Am. Statesman*, 552 S.W.2d 99, 103 (Tex.1977). The doctrine under which courts rely on a penal statute to define a reasonably prudent person's standard of care is referred to as negligence per se. *Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex.2001).

■ The unexcused violation of a statute setting an applicable standard of care constitutes negligence per se if the statute is designed to prevent an injury to that class of persons to which the injured party belongs. *Poole*, 732 S.W.2d at 312. Thus, two primary factors determine whether the violation of a criminal statute gives rise to negligence per se: (1) whether the party asserting negligence per se is in the class of persons the statute is designed to protect; and (2) whether that person's injury is the type of injury the statute was designed to prevent. *See Reeder*, 61 S.W.3d at 366 (Phillips, J., concurring).

### 2. Class of Persons Protected by Section 545.251(c)

For Kelly's violation of section 545.251(c) to constitute negligence per se, the railroad companies had to be in the class of persons the statute is designed to protect. *See id.* In her second issue, Kelly argues that she—not the railroad companies—is in the class of persons to be protected by section 545.251(c).

■ The supreme court has repeatedly held that a driver's violation of the prede-

cessor statute to section 545.251(c) can constitute negligence per se on the driver's part. *See, e.g., Praesel,* 967 S.W.2d at 395 (explaining that "it is negligence per se, absent a valid excuse, to ... fail to stop at a railroad crossing when a train is approaching"); *Carter v. William Sommerville & Son, Inc.,* 584 S.W.2d 274, 278 (Tex.1979) (same); *S. Pac. Co. v. Castro,* 493 S.W.2d 491, 496–97 (Tex.1973) (same); *Christy v. Blades,* 448 S.W.2d 107, 111 (Tex.1969) (same), *overruled in part on other grounds by Castro,* 493 S.W.2d at 498; *Missouri–Kansas–Texas R.R. Co. v. McFerrin,* 156 Tex. 69, 81–82, 291 S.W.2d 931, 939 (1956) (same).

We have no trouble concluding that, like its predecessor statute, the legislative purposes of section 545.251(c) include the prevention of railroad crossing accidents between motor vehicles and moving trains. *See Tex. & N.O. R.R. Co. v. Stewart,* 248 S.W.2d 177, 184 (Tex.Civ.App.-Waco 1952, writ ref'd n.r.e.). Thus, it appears that the class of persons to be protected by the statute includes both the operators of motor vehicles and the owners and operators of trains, such as the railroad companies here. We resolve Kelly's second issue against her.

### 3. Excuse

■ "It is the *unexcused* violation of a penal standard which constitutes negligence per se." *Castro,* 493 S.W.2d at 497 (emphasis added). Thus, to prove negligence per se, the party must prove (1) a violation of a penal standard, (2) which is unexcused. *Id.* (citing William L. Prosser, *Contributory Negligence as Defense to Violation of Statute,* 32 MINN. L.REV. 105 (1948)). *See* W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 36 (5th ed.1984).

■ Section 545.251(c) provides that a motorist approaching a railroad grade crossing equipped with crossbuck signs "shall yield the right-of-way to a train *in hazardous proximity to the crossing* ... [and] [i]f required for safety shall stop at a clearly marked stop line before the grade crossing or, if no stop exists [between fifty and fifteen feet] from the nearest rail." TEX. TRANSP. CODE ANN. § 545.251(c) (emphasis added). It is undisputed that, at the time Kelly approached the crossing, the engines pulling the train had already proceeded through the crossing, and the crossing was occupied by the train's freight cars. In such circumstances, we conclude as a matter of law that the moving train was "in hazardous proximity to the crossing." *See id.* It is also undisputed that Kelly did not yield the right-of-way or stop at a stop line or the statutory distance from the rail required for safety.

■ Accordingly, the summary judgment evidence conclusively established Kelly's violation of section 545.251(c). However, in her third issue, Kelly asserts the trial court erred in granting summary judgment based on the railroad companies' negligence per se affirmative defense because she raised an issue as to whether her violation of section 545.251(c) was unexcused.

In *Impson v. Structural Metals, Inc.,* 487 S.W.2d 694 (Tex.1972), the supreme court recited some of the permissible excuses which would prevent a statutory violation from constituting negligence per se:

(a) the violation is reasonable because of the actor's incapacity;

(b) the actor neither knows nor should have known of the occasion for compliance;

(c) the actor is unable after reasonable diligence or care to comply;

(d) the actor is confronted by an emergency not due to the actor's own misconduct;

(e) compliance would involve a greater risk of harm to the actor or to others.

*Id.* at 696 (citing RESTATEMENT (SECOND) OF TORTS § 288A (1965)).

In support of her argument, Kelly's brief points to evidence as to her difficulty in seeing the train, based on the lack of sunlight, the unlighted nature of the crossing, the fact that railcars are typically dark and covered with grime, and the absence of reflector tape on the rail cars. She also points to her own testimony that she had seen the train prior to hitting it, but was unable to slow or stop in time to avoid the accident. She quotes from a 1947 opinion from this Court to the effect that it is presumed that a party will exercise ordinary care in her own protection and not voluntarily place herself in a position of peril.[6]

We conclude the summary judgment evidence does not raise an issue as to whether Kelly's violation of section 545.251(c) was excused. The statute provides that a motorist in Kelly's situation "*shall yield the right-of-way to a train in hazardous proximity to the crossing* ... [and] *[i]f required for safety shall stop* at a clearly marked stop line before the grade crossing or, if no stop exists [between fifty and fifteen feet] from the nearest rail." TEX. TRANSP. CODE ANN. § 545.251(c) (emphasis added). Thus, unlike the previous version of the statute, the yield and stop requirements are not contingent on whether the

train is "plainly visible."[7] Although the driver's duties under both versions of the statute are contingent on whether the train is "in hazardous proximity to the crossing," as noted above, in such circumstances such as those in the present case, the train was in hazardous proximity to the crossing as a matter of law at the time Kelly approached the crossing. *See id.*

Kelly relies on *State Highway Department v. Pinner*, 531 S.W.2d 851, 854–55 (Tex.Civ.App.-Beaumont 1975, no writ), to support her argument that her statutory violation was excused. In *Pinner*, there was evidence that highway department repair vehicles, one with blinking red lights on top and another with a revolving amber light, were parked in front of railroad signal lights on one side of the crossing, and at least partially obstructed them. There was evidence the lights on the highway trucks were confusing and distracting. *See id.* at 854. The jury excused the driver's violation of the predecessor statute, finding he was unable to stop by finding that he could not stop, and that his inability was not caused by his own negligence. *Id.* at 855. The Beaumont court noted that "inability" was a recognized excuse. *See id.* (citing *Impson*, 487 S.W.2d at 696).

*Pinner* involved the prior version of the statute, which (as noted above) made the driver's duty to stop contingent in part on

---

6. *See Henwood v. Gilliam*, 207 S.W.2d 904, 909 (Tex.Civ.App.-Dallas 1947, writ ref'd.).

7. The predecessor statute to section 545.251(c) provided:

   **Sec. 86. Obedience to Signal Indicating Approach of Train.** Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad and shall not proceed until he can do so safely when:

   . . .
   (d) An approaching train is plainly visible and is in hazardous proximity to such crossing.

   Act of June 5, 1947, 50th Leg., R.S., ch. 421, 1947 Tex. Gen. Laws 967, 983 (formerly TEX. REV.CIV. STAT. ANN. art. 6701d, § 86(d)) (amended 1995), *repealed and codified by* Act of May 1, 1995, 74th Leg., R.S., 1995 Tex. Gen. Laws 1025, 1631 (amended 1997) (current version at TEX. TRANSP. CODE ANN. § 545.251(c)).

whether the train was "clearly visible." *Id.* (citing previous statute Tex.Rev.Civ. Stat. Ann. art. 6701d, § 86(d)). Moreover, *Pinner* is a negligent obstruction case. Kelly did not allege or bring forth any evidence that either the crossbuck signs, an advanced warning sign located at the crossing, or the train were partially obstructed.

Kelly's evidence regarding the difficulty of seeing trains at night without reflector tape goes to the difficulty of seeing a train in circumstances of low ambient lighting. This evidence is not pertinent to obstruction, as in *Pinner.* Kelly's evidence was that, despite having an unobstructed view, she did not see the train in time to stop, not that she was prevented from seeing or unable to see it (or any of the warning signs) due to an obstruction. *See Impson,* 487 S.W.2d at 696; *Christy,* 448 S.W.2d at 110 (describing impossibility of stopping before collision with train because of lack of time when driver's view of approaching train obscured by string of railcars on nearer track).

We conclude that Kelly failed to carry her burden to bring forth evidence that her violation of section 545.251(c) was excused, thus failing to raise a fact issue on her defense of excuse in avoidance of appellees' affirmative defense of negligence per se. *See Moughon v. Wolf,* 576 S.W.2d 603, 604–05 (Tex.1978) (discussing burdens of proof and production as to excuse as defense to negligence per se). Accordingly, we reject Kelly's argument that she produced evidence that her statutory violation was excused, and we decide her third issue against her.

## V. CONCLUSION

Having resolved Kelly's second and third issues against her, we conclude the trial court properly granted summary judgment on traditional grounds in the railroad companies' favor on Kelly's negligent failure-to-warn claim, based on the railroad companies' affirmative defense that Kelly was negligent per se. We affirm the trial court's final summary judgment.